UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

CASE NO. 1:25-cv-01086-WO-JLW

F&D INTERNATIONAL CORP.,
a North Carolina corporation,

     Plaintiff,

v.

U.S. FOOD AND DRUG ADMINISTRATION;
MARTIN A. MAKARY, M.D., in his official
capacity as Commissioner of Food and Drugs;
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES; and
ROBERT F. KENNEDY JR., in his official
capacity as Secretary of Health and Human
Services,

     Defendants.

_____/

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, F&D INTERNATIONAL CORP. ("F&D International"), through undersigned and pursuant to the Federal Rules of Civil Procedure, hereby brings this action for judicial review of the actions by the United States Food and Drug Administration, Martin A. Makary, M.D. ("Dr. Makary"), United States Department of Health and Human Services, and Robert F. Kennedy Jr. ("Secretary Kennedy") (collective "FDA"), and seeks declaratory relief and alleges as follows:

Case 1:25-cv-01086-LAF-JGM   Document 10   Filed 04/03/26   Page 1 of 19

## INTRODUCTION

1.      This is an action for declaratory judgment and injunctive relief requiring FDA to cease its unlawful detention of four (4) shipments, along with the unlawful rescission of one (1) shipment, of imported frozen roasted eel products and discontinue its broader pattern of arbitrary and capricious behavior against F&D International.

2.      FDA has unlawfully withheld action under 5 U.S.C. § 706(1) and engaged in arbitrary and capricious conduct, including unjustifiably detaining shipments, rescinding a release after domestication, and treating materially identical shipments differently without explanation, in violation of statutory authority, fair notice, and due process.

3.      Plaintiff, F&D International, repeatedly submitted required filings, objections, administrative appeals (including FDA Form 766), and a formal Citizen Petition concerning the detention and rescission of releases of F&D International's imported food products. FDA has failed and refused to issue decisions, act on the petitions, or provide any final agency action. Plaintiff also submitted multiple rounds of third-party laboratory testing confirming that the products are not adulterated and comply with FDA requirements, which FDA failed to meaningfully consider or address.

4.      F&D International seeks judicial intervention to compel FDA to issue decisions on the pending petitions, appeals, and to release or adjudicate detained shipments lawfully. Absent judicial intervention, Plaintiff faces the imminent loss of perishable goods and continued disruption of its business operations.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, 5 U.S.C. § 702, and 28 U.S.C. § 1651.

6. Venue is proper in this District under 28 U.S.C. § 1391(e), because Plaintiff resides in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

7. Plaintiff, F&D International Corp., is incorporated in North Carolina, with its principal place of business in Durham, and engaged in the lawful importation and distribution of food products in interstate commerce.

8. Defendant, U.S. Food and Drug Administration, is a federal agency within the U.S. Department of Health and Human Services charged with enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA").

9. Defendant, Martin A. Makary, M.D., is Commissioner of Food and Drugs, sued in his official capacity.

10. Defendant, U.S. Department of Health and Human Services, oversees FDA.

11. Defendant, Robert F. Kennedy Jr., is Secretary of HHS, sued in his official capacity.

## FACTUAL BACKGROUND
### FDA

12. FDA is the primary agency responsible for administering and enforcing the FDCA. FDA enforces the FDCA through both civil and criminal enforcement actions.

Case 1:25-cv-01086-LAF-JGM    Document 10    Filed 04/03/26    Page 3 of 19

13. For civil enforcement actions that do not require involvement from the Department of Justice, FDA can issue warning letters, recalls, debarments, civil money penalties, seizures, as well as import alerts.

14. An import alert is a tool used by FDA to flag products with a history of violations so that field offices are on notice of potential risk.

15. Once a product is placed on import alert, FDA staff may hold incoming shipments without conducting physical testing or inspection—a process known as detention without physical examination—or "DWPE". This mechanism enables the agency to quickly block potentially unsafe or noncompliant products from entering U.S. market.

16. A refusal of admission is FDA's final determination that a shipment violates U.S. law.

17. Products commonly refused include those found to be adulterated, misbranded, containing unapproved ingredients, or violative of a third party's intellectual property rights.

18. When a product is on an import alert, each shipment will be held at the port of entry and will not be allowed to enter unless the product has been tested by an approved laboratory for the agent of concern using a testing protocol and laboratory that FDA will review, and where compliant results are accepted, the product is routinely admitted into commerce.

19. The lab then sends the results to FDA, and if FDA accepts the results and the product is compliant it will be allowed to enter the U.S.

20. The entire cost of this process (testing, holding of product etc.) is borne by the company trying to import the product into the U.S.

21. An importer may petition the FDA for removal of its product from an import alert, including having its foreign manufacturer and shippers gain pre-approval status by being designated on the FDA's "Green List". The FDA provides general requirements for removal and "Green List" approval, but one criterion is the FDA's acceptance of five (5) consecutive compliant shipments into the U.S.

22. Under the FDCA, if FDA detains a shipment or issues a Notice of Refusal, an importer is entitled to submit responses, evidence, and administrative appeals, including FDA Form 766.

### F&D International

23. F&D International is a long-standing importer of food products subject to FDA jurisdiction, including frozen roasted eel products.

24. Since 1993, F&D International has imported frozen roasted eel products from various Chinese manufacturers into the U.S. without a single adulteration finding, safety incident, or public health concern.

25. Each imported container holds 2,200 cases; each case contains two small cases; each small case contains 15 individual units — totaling 66,000 individual units per container, stored at the Port of Wilmington Cold Storage in Wilmington, North Carolina.

### FDA's Sudden and Unexplained Shift in Enforcement

26. Beginning in early 2025, however, the FDA Southeast Import Division ("SEID") undertook a pattern of arbitrary, inconsistent, and unexplained detentions and

refusals of F&D International's frozen roasted eel products—despite the products being identical to earlier shipments that FDA had repeatedly released without objection and continuing to release other identical shipments during the same time period.

27. Between April 2025 and April 2026, FDA has released eighteen (18) containers involving the same product, labeling, and supply chain, all without identifying any labeling deficiency. Four (4) shipments remain detained and one (1) subject to an unlawful rescission of release.

28. These actions culminated in the unprecedented rescission of a previously issued release after domestication, extended delays in responding to formal appeals and filings, inconsistent application of Import Alert 16-131, and the imposition of new labeling-based violations not supported by statute, regulation, or FDA practice, particularly where those same alleged deficiencies did not prevent FDA from releasing other identical entries.

29. FDA consistently released prior F&D International frozen eel entries (including Entries 788-1883189-9, 788-1883293-9, 788-1886638-2, 788-1889503-5; 788-1884697-0) without raising any labeling or adulteration issues, and then—without any change in product composition, labeling, or country of origin—began detaining and refusing later entries on new grounds not previously asserted. FDA has continued to release materially identical entries through the date of filing without identifying any safety concern.

30. To date, FDA continues to detain four (4) shipments (Entries 788-1888520-0, 788-1890934-9, 788-1887734-8, 788-1893086-5) and rescind the admission of one (1)

shipment (Entry 788-1893346-3) (collectively "<u>Detained Entries</u>"), despite their material indistinguishability from other entries FDA has released.

31.     The released entries are materially identical to the Detained Entries in composition, source, labeling, and testing profile. FDA has provided no reasoned explanation for treating these shipments differently.

**<u>Laboratory Testing Confirmed No Adulteration; FDA Shifted to New Theories</u>**

32.     For each Detained Entry, every Import Alert 16-131 analyte — Malachite Green, Gentian Violet, Leucomalachite Green, Leucogentian Violet, and Mebendazole — tested negative at or below detection limits in certified reports from Certified Laboratories, Inc., an FDA-approved third-party laboratory. F&D International timely submitted these results to FDA following each detention notice.

33.     Rather than accepting those results and releasing the entries, FDA shifted theories mid-stream — abandoning adulteration grounds after being rebutted by laboratory evidence, then asserting new NLEA-based labeling violations that had never been raised against other shipments involving the same product, labeling, and supply chain. The labeling issues FDA now identifies are limited entirely to rounding conventions and formatting in the Nutrition Facts Label. FDA has acknowledged the nutritional values themselves are accurate. No safety concern has ever been identified.

**<u>FDA Failed to Provide Notice or Meaningful Administrative Process</u>**

34.     Across multiple entries F&D International submitted timely verbal and written testimony, FD-766s, and appeals. FDA did not confirm receipt, did not

acknowledge evidence, and did not issue reasoned responses, depriving Plaintiff of any meaningful administrative process.

35.     After F&D International rebutted the violations cited in initial detention notices—including Import Alert 16-131 concerns—FDA added new labeling-based charges after F&D International had already overcome the original allegations through testimony and lab results.

## Unprecedented Rescission After Release and Distribution

36.     These alleged NLEA deviations had not previously been applied to Plaintiff's identical entries, including those FDA released without objection.

37.     In fact, as to Entry 788-1893346-3, FDA released Plaintiff's shipments after sampling and testing. FDA issued a rescission notice after the product had already been distributed and was no longer in Plaintiff's possession.

38.     This shifting of theories prevented Plaintiff from meaningfully responding and violated basic due process requirements, including notice and an opportunity to respond to stable and consistent agency positions.

## FDA's Failure to Act on Appeals and Citizen Petition

39.     F&D International filed timely administrative appeals, Form 766 requests, objections, test results, and corrective documentation, but FDA failed to respond, act, schedule hearings, or issue any written decision, resulting in indefinite detention without final agency action.

40.     Indeed, in September 2025, F&D International submitted a Citizen Petition under 21 C.F.R. § 10.30, requesting FDA to (i) issue final decisions; (ii) rescind unlawful

rescissions; (iii) stop detention of domesticated shipments; and (iv) clarify labeling standards.

41. FDA further asserted contradictory positions, at times acknowledging appeals, at times stating no appeal had been received, and at times asserting that refusals were "final" regardless of pending appeals, while simultaneously failing to issue any final agency action.

42. To date, FDA has not ruled upon, or taken final action on any of these submissions, including the Citizen Petition, whose 180 days deadline has expired, despite the ongoing detention and risk of destruction of Plaintiff's products.

**FDA Imposed Operationally Infeasible and
Disproportionate Reconditioning Requirements**

43. After the filing of the original Complaint, the parties engaged in a series of discussions and submissions aimed at resolving the status of the Detained Entries through administrative means, including multiple FD-766 submissions and proposed reconditioning plans. Plaintiff proposed several alternative compliance pathways, including (i) relabeling limited to outer cartons for wholesale and restaurant-only distribution, (ii) release with comment conditioned on an affidavit restricting the products to non-retail use, and (iii) implementation of targeted corrective labeling measures designed to address any perceived technical deficiencies while preserving product integrity and safety. These proposals were grounded in applicable regulatory provisions, including exemptions for restaurant-use products, and were accompanied by supporting documentation, revised labeling materials, and operational protocols.

44. Despite these efforts, FDA either failed to provide a clear, consistent path to compliance or imposed conditions that were operationally infeasible and disproportionate to the alleged violations. For example, FDA required full reconditioning of all individual units across multiple containers—amounting to 264,000 items across the four detained shipments— which would require disassembly and relabeling of individual units at a scale that is not operationally feasible. Plaintiff repeatedly explained that such requirements were not reasonably achievable and were unnecessary given that the products were safe, had passed laboratory testing, and could be brought into compliance through less burdensome means.

45. Ultimately, FDA rejected Plaintiff's proposals without providing a reasoned explanation or offering a viable alternative, while continuing to delay final agency action and maintain detention of the subject entries. At the same time, FDA acknowledged that failure to comply with its imposed conditions would result in refusal, destruction, or export of the goods, thereby placing Plaintiff in an untenable position: either undertake infeasible reconditioning measures or suffer the loss of safe, perishable products without meaningful administrative recourse.

**<u>Ongoing and Expanding Harm to Plaintiff's Business</u>**

46. Because of FDA's actions and inactions, F&D International has suffered significant business disruption, financial loss, and reputational harm, including delayed shipments, spoilage risk, lost customers, and inability to maintain supply continuity, as well as the imminent risk of destruction of perishable inventory.

47.     As of April 1, 2026, FDA has expanded its enforcement posture beyond the entries at issue in this case. Although FDA previously indicated it was considering an audit sample of a separate entry, that entry has since been released. However, FDA is currently holding additional entries for which laboratory results have been submitted and not acted upon. These developments confirm that the harm to F&D International is ongoing and expanding, threatening its broader import operations.

**Exhaustion and Futility of Administrative Remedies**

48.     In light of the foregoing, F&D International has concluded that seeking Court intervention is the company's only recourse for relief from FDA's improper actions.

49.     F&D International has exhausted all administrative remedies available to it. Alternatively, any additional pursuit of administrative relief from FDA would be futile and would only result in further delay and harm to F&D International, particularly given FDA's failure to respond to prior submissions and inconsistent treatment of identical shipments.

**COUNT I — VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (ARBITRARY AND CAPRICIOUS AGENCY ACTION (5 U.S.C. § 706(1)))**

50.     F&D International realleges Paragraphs 1 through 49 as if fully set forth herein.

51.     Pursuant to 5 U.S.C. §706(2)(A) and (D), a court must hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law or without observance of procedure required by law.

52.     FDA initially detained the four (4) Detained Entries on adulteration grounds under FDCA §§ 402(a)(2)(C)(i) and 402(a)(2)(C)(ii), alleging the presence of Malachite

Green, Gentian Violet, and Mebendazole under Import Alert 16-131. F&D International timely submitted certified laboratory results from Certified Laboratories, Inc., an FDA-approved third-party laboratory, demonstrating that all five entries tested negative for every Import Alert 16-131 analyte at or below detection limits. FDA did not dispute, challenge, or respond to these results.

53. Instead, FDA abandoned the adulteration theory and shifted to asserting NLEA labeling violations — specifically, mathematical rounding conventions in the Nutrition Facts Label — that it had never previously raised against any F&D International entry. Thus, FDA relied on post-hoc justifications after its original rationale was rebutted.

54. This theory-shifting prevented F&D International from meaningfully responding and cannot sustain the continued detentions.

55. Between April 2025 and March 2026, FDA released eighteen (18) entries of frozen roasted eel involving the same product, labeling, and supply chain — including entries released up to the date of this filing — without raising a single labeling objection in any instance. FDA has provided no reasoned explanation for why the same labeling that was acceptable for eighteen (18) released entries is now grounds for detention, mandatory reconditioning demands, and threatened destruction of four additional entries.

56. F&D International distributes frozen roasted eel exclusively on a wholesale basis to restaurants and food service establishments. The product is not sold to retail consumers in the individual packages received from F&D International. This distribution model is consistent with the restaurant exemption under 21 C.F.R. § 101.9(j)(2), which applies to food sold for use in food service establishments where the product is not

Case 1:25-cv-01086-LAF-JGM    Document 10    Filed 04/03/26    Page 12 of 19

presented to consumers in its received package and is instead further prepared or served as part of restaurant meals. FDA has never engaged with the applicability of this exemption to F&D International's distribution model. The failure to consider an obviously applicable regulatory exemption further underscores the lack of reasoned decision-making.

57. Even assuming any labeling correction were warranted, FDA's demand for unit-by-unit reconditioning of 264,000 individual frozen food packages — requiring disassembly of thousands of cases, application of corrective stickers to each individual package, repackaging, re-securing, and temperature-controlled verification, all within 30 days — is wildly disproportionate to the nature of the alleged violations, which are limited entirely to formatting and rounding conventions bearing no relationship to product safety.

58. FDA's own Regulatory Procedures Manual provides a directly applicable, proportionate remedy for first-encounter labeling deficiencies in imported products: Release with Comment, which releases the shipment while providing prospective notice that future entries may be detained unless the identified issue is corrected. The Notice of FDA Action for Entry 788-1890934-9 itself directed F&D International to the RPM's Release with Comment mechanism. FDA's failure to consider this obvious, less-burdensome alternative — prescribed by its own regulatory manual — renders its reconditioning demand arbitrary and capricious.

59. Furthermore, FDA's rescission of Entry 788-1893346-3 after release and distribution lacked any clear statutory or procedural basis and was undertaken without adherence to required procedures.

60. As a result of FDA's arbitrary and capricious actions described above, F&D International has suffered and continues to suffer significant business disruption, financial loss, and reputational harm, including delayed shipments, spoilage risk, lost customers, inability to maintain supply continuity, and the imminent, irreparable destruction of perishable goods that are concededly safe.

## COUNT II — VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (UNREASONABLE DELAY AND FAILURE TO ACT(5 U.S.C. § 706(1)))

61. F&D International realleges Paragraphs 1 through 49 as if fully set forth herein.

62. Section 706(1) of the APA empowers a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The agency action at issue must be discrete and legally required.

63. FDA has failed to issue any final written decision on F&D International's multiple FD-766 reconditioning submissions, administrative appeals, and requests for Release with Comment filed regarding the Detained Entries. FDA did not confirm receipt of several submissions, did not acknowledge evidence submitted in response to the initial Notices of FDA Action, and at various times asserted contradictory positions — acknowledging appeals at certain points and denying that any appeal had been received for the same entries at other points — without ever issuing a reasoned written determination.

64. FDA has failed to act on F&D International's Citizen Petition filed September 23, 2025. Under 21 C.F.R. § 10.30(e)(1), FDA must acknowledge a Citizen Petition within 15 days of receipt. Under 21 C.F.R. § 10.30(e)(2), the Commissioner "shall"

respond to the substance of a Citizen Petition within 180 days — a mandatory obligation that this Court may enforce. The 180-day deadline elapsed March 22, 2026. As of the date of this filing, FDA has neither acknowledged nor substantively responded to the Citizen Petition.

65. FDA's failure to act is especially egregious given the concurrent litigation context. F&D International filed the Citizen Petition specifically to obtain final agency action on the detained entries before and during this proceeding. FDA's silence on the Petition — now extended beyond the mandatory response period — effectively forecloses the administrative resolution that the Petition was designed to achieve while simultaneously depriving this Court of a developed agency record on the precise issues presented.

66. As a result of FDA's unlawful failure to act, F&D International has suffered and continues to suffer significant business disruption, financial loss, and the imminent irreparable loss of perishable goods, including the mounting cold storage costs, lost customer relationships, and the escalating risk of formal refusal and destruction of the detained product.

## COUNT III — VIOLATION OF THE DUE PROCESS CLAUSE

67. F&D International realleges Paragraphs 1 through 49 as if fully set forth herein.

68. Pursuant to 5 U.S.C. §706(2)(B), a court must hold unlawful and set aside agency action found to be contrary to constitutional right, power, privilege, or immunity.

69. The Fifth Amendment's Due Process Clause provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V.

70. FDA has denied F&D International its due process rights by arbitrarily and capriciously refusing to release Detained Entries, while releasing materially identical shipments without explanation.

71. Furthermore, FDA has denied F&D International its due process rights by FDA's unprecedented rescission of a previously issued release after domestication, extended delays in responding to formal appeals and filings, inconsistent application of Import Alert 16-131, and the imposition of new labeling-based violations not supported by statute, regulation, or FDA practice, without providing consistent standards or fair notice.

72. FDA has misinterpreted and misapplied the law, without just and fair consideration of the facts and law, and been derelict in its duties by, *inter alia*, failing to timely and substantively respond to F&D Internationals numerous submissions, and by depriving Plaintiff of a meaningful opportunity to be heard.

73. As a result, F&D International has been and continues to be harmed by FDA's arbitrary and capricious actions by, *inter alia*, suffering significant business disruption, financial loss, and reputational harm, including delayed shipments, spoilage risk, lost customers, inability to maintain supply continuity, and imminent destruction of perishable goods.

## COUNT IV – DECLARATORY JUDGMENT

74.     F&D International realleges Paragraphs 1 through 49 as if fully set forth herein.

75.     FDA's actions are in violation of federal law and regulations, including the requirement that agency action be reasoned, consistent, and based on relevant evidence.

76.     F&D International is suffering harm due to FDA's failure to follow the law.

77.     FDA's unlawful conduct is ongoing and immediate. As a result of FDA's conduct, F&D International has been directly and proximately harmed and is being harmed.

78.     Pursuant to 28 U.S.C. §2201, et seq., F&D International requests that the Court: (a) declare FDA's actions as set forth in this Amended Complaint are contrary to federal law and regulations; (b) declare that FDA has acted arbitrarily and capriciously in its application of federal law and regulations; (c) preliminary and permanently enjoin FDA from continuing to improperly detain the Detained Entries; (d) enter judgment in favor of F&D International, and (e) declare that FDA's inconsistent treatment of materially identical shipments is arbitrary and capricious and unlawful.

## REQUEST FOR RELIEF

WHEREFORE, F&D International respectfully requests judgment in its favor against FDA as follows:

(i)     Declare that FDA acted unlawfully in detaining the Detained Entries, and that FDA's release of Entry 788-1893346-3 was final and FDA's rescission was unlawful;

(ii)    Enjoin FDA from continuing to detain the Detained Entries;

(iii) Declare that FDA must consistently apply Import Alert 16-131 as it relates to F&D International's frozen roasted eel products, particularly where those products are identical to earlier shipments that FDA has repeatedly released without objection, including where those products are identical to shipments FDA has released before and after the Detained Entries;

(iv) Declare that FDA cannot continue to arbitrarily and capriciously detain F&D International's frozen roasted eel products, including rescinding previous releases, until and unless FDA establishes bona fide adulteration and/or labeling issues supported by consistent application across similarly situated entries;

(v) Enjoin FDA from continuing its improper interference with F&D International's frozen roasted eel products that otherwise meet all criteria of Import Alert 16-131;

(vi) Declare that FDA cannot utilize any unlawful prior detentions of F&D International's frozen roasted eel products as a basis to deny F&D International's petition to the FDA for removal of its product from Import Alert 16-131, including using these prior detentions as a bases to deny F&D International's foreign manufacturers and shippers gain pre-approval status by being designated on the FDA's "Green List";

(vii) Enjoin FDA from treating materially identical shipments inconsistently without a reasoned and lawful basis;

(viii) Declare that FDA must respond to the Citizen Petition within a specified time;

(ix) Award F&D International all available monetary relief to the extent permitted by law, including recovery of damages directly resulting from FDA's unlawful detention and related actions, including but not limited to cold storage costs, handling and logistics expenses, and the loss in value of perishable product attributable to prolonged detention, spoilage, or degradation;

(x) Award F&D International its reasonably attorneys' fees and costs, as permitted by law; and

(xi) Such other relief as the Court deems just and appropriate.

Dated: April 3, 2026

Respectfully submitted,

By: */s/ Gustavo A. Bravo*       By: */s/ Neil D. Kodsi*
     Gustavo A. Bravo, Esq.*          Neil D. Kodsi, Esq.
     Florida Bar No. 551287          North Carolina Bar No. 23228
     *Lead Counsel for Plaintiff*          *Local Counsel for Plaintiff*

     BRAVO LAW          FELDMAN KODSI
     1555 Bonaventure Blvd., Suite 157          8325 NE 2nd Ave., Suite 204
     Weston, Florida 33326          Miami, FL 33138
     Telephone: (954) 790-6711          Telephone: (305) 445-2005
     gbravo@lawbravo.com          NKodsi@FeldmanKodsi.com
     efile@lawbravo.com

\* Appearing by Special Appearance Pursuant to L.R. 83.1(d)