| | |
|---|---|
| F&D INTERNATIONAL CORP., a North Carolina corporation, <br><br> Plaintiff, <br><br> v. <br><br> U.S. FOOD AND DRUG ADMINISTRATION; MARTIN A. MAKARY, M.D., in his official capacity as Commissioner of Food and Drugs; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ROBERT F. KENNEDY JR., in his official capacity as Secretary of Health and Human Services, <br><br> Defendants. | CASE NO. 1:25-cv-01086-WO-JLW <br><br><br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Since early 2025, FDA has released eighteen shipments of Plaintiff's frozen roasted eel products—each involving the same product, labeling, and supply chain—while detaining four materially identical shipments and attempting to rescind three after they had already been released and distributed into commerce. FDA has never identified any safety concern and does not dispute certified laboratory results confirming that all entries comply with Import Alert 16-131.

Rather than releasing the detained entries after those results were submitted, FDA shifted to newly asserted labeling-based objections and issued Notices of Action approving

reconditioning in principle while imposing conditions that, if not accepted, will result in refusal of admission. These conditions require relabeling approximately 264,000 individual units within an impracticable timeframe.

FDA has acknowledged that the product can be brought into compliance through relabeling yet has imposed conditions that render compliance impracticable while failing to issue final agency action on Plaintiff's Citizen Petition. Absent injunctive relief, Plaintiff will suffer irreparable harm through continued business disruption, mounting costs, and loss of perishable inventory.

## STATEMENT OF FACTS

I. <u>F&D INTERNATIONAL'S THIRTY-YEAR COMPLIANCE HISTORY & IMPORT ALERT 16-131</u>

Since 1993, F&D International has imported frozen roasted eel from Chinese manufacturers without a single adulteration finding, safety incident, or consumer complaint. *See* Declaration of Yuliang Feng in Support at ¶ 5, attached hereto ("<u>Feng Declaration</u>"). Before the detentions and rescissions at issue, FDA never identified a labeling deficiency in any F&D International frozen eel shipment. *See id*. at ¶¶ 5, 11.

Import Alert 16-131 (IA 16-131) authorizes detention of imported eel products based on suspicion of adulteration. Under the IA 16-131 protocol, a detained importer may engage an FDA-approved third-party laboratory, submit certified test results, and obtain release upon demonstrating compliance. Under FDA's own Regulatory Procedures Manual ("RPM"), when a violation is not sufficient to warrant detention on a first-encounter basis,

Case 1:25-cv-01086-LAF-JGM    Document 15    Filed 04/17/26    Page 2 of 21

FDA may issue a Release with Comment — releasing the shipment while notifying the importer that future shipments may be detained unless the violation is corrected.

II. EIGHTEEN ENTRIES RELEASED: SEVEN ENTRIES DETAINED OR RESCINDED – NO REASONED DISTINCTION

Beginning in early 2025, the FDA Southeast Import Division ("SEID") undertook a pattern of inconsistent enforcement—releasing eighteen entries involving the same product, labeling, and supply chain while detaining four and rescinding three materially identical entry without explanation. *See id*. at ¶ 10. FDA has also issued Notices of Action for each detained entry stating that reconditioning requests are approved, subject to conditions that, if not accepted, will result in refusal of admission. *See id*. at ¶ 15.

The four currently detained entries — Entries 788-1887734-8, 788-1888520-0, 788-1890934-9, and 788-1893086-5 — hold a combined 264,000 individual units (four containers × 66,000 units each) stored at Port of Wilmington Cold Storage, Wilmington, NC. *See id*. Further, Entries 788-1893346-3, 788-1912036-7 and 788-1912032-6, were distributed into commerce, and then subjected to a purported rescission notice — after the products had already been distributed and consumed and were no longer in Plaintiff's possession. *See id*. at ¶ 14.

FDA has provided no explanation for why these eighteen entries were released without objection while seven entries with materially identical product, labeling, and origin remain detained or rescinded.

### III. LABORATORY RECORD: ENTRIES NOT ADULTERATED & SAFE

Pursuant to IA 16-131 protocols, F&D International engaged Certified Laboratories, Inc., an FDA-approved third-party laboratory, to test all seven entries detained or rescinded. Every Import Alert 16-131 analyte tested at or below detection limits for every entry. *See id*. at ¶¶29, 30, Exhibit B.

FDA has not disputed or challenged any of these laboratory results. *See id*. ¶31.

### IV. FDA'S INITIAL DETENTION GROUNDS AND THE PIVOT TO LABELING

On May 22, 2025, FDA's SEID, under Compliance Officer Randy N. Boling, issued a Notice of FDA Action ("NOFA") for each of the four detained entries citing FDCA §§ 402(a)(2)(C)(i) and 402(a)(2)(C)(ii) — adulteration — based on suspected Gentian Violet, Malachite Green, and Mebendazole under Import Alert 16-131. *See id.* at Exhibit C.

After receiving undisputed laboratory results showing no adulteration, FDA did not release the detained product. Instead, FDA asserted for the first time a series of labeling violations — all rounding conventions or formatting issues, including that cholesterol is declared as "249 mg" rather than "250 mg" and sodium as "525 mg" rather than "530 mg." *See id.* at ¶¶ 22, 34, Exhibit F. None of these violations have been raised against any prior F&D International entry. *See id.* at ¶ 11. FDA has since formalized this shift through Notices of Action approving reconditioning subject to conditions that Plaintiff cannot reasonably satisfy, while acknowledging that the underlying nutritional values are accurate and that no safety concern exists. *See id.* at ¶ 20, 21.

## V. THE RESCISSION OF THREE ENTRIES

FDA released Entry 788-1893346-3 at the Port of New York, and Entries 788-1912036-7 and 788-1912032-6 at the Port of North Carolina. By the time FDA issued rescission notices, the products had already been distributed to customers and were no longer in Plaintiff's possession. *See id.* at ¶ 14. Reconditioning these entries is thus physically impossible.

In each instance, the rescissions violated FDA's own procedures and occurred after the product had entered U.S. commerce and was no longer in Plaintiff's possession, rendering compliance impossible.

## VI. FDA'S ILLUSORY RECONDITIONING APPROVAL

For the detained entries, FDA issued Notices of Action stating that reconditioning requests were approved. However, those same notices impose conditions requiring relabeling of approximately 264,000 individual frozen units within 30 days and state that failure to accept those conditions will result in refusal of admission. *See id.* at ¶ 20, 21. Of course, these notices confirm that FDA does not contend the product is unsafe and acknowledges that compliance is achievable through relabeling.

Ultimately, FDA approved reconditioning in principle but imposed conditions requiring relabeling of approximately 264,000 individual frozen units within 30 days. Those conditions are not operationally feasible and effectively leave Plaintiff with a binary outcome: accept impracticable requirements or face refusal.

## QUESTIONS PRESENTED

I.      Whether FDA's detention of four entries is arbitrary and capricious where (i) FDA's stated adulteration rationale was disproven by undisputed certified laboratory results obtained through FDA's own approved protocol, and FDA substituted labeling-based objections it had never previously applied to any F&D International shipment; (ii) FDA released eighteen materially identical entries without raising any labeling objection and has provided no reasoned explanation for the differential treatment; and (iii) FDA failed to consider the less burdensome alternative of Release with Comment, which its own Regulatory Procedures Manual expressly authorizes.

II.     Whether FDA's labeling-based detention objections have any cognizable legal basis where F&D International distributes exclusively to food service establishments and the NLEA nutritional labeling requirements FDA invokes do not apply to food sold through food service channels under 21 C.F.R. § 101.9(j)(2).

III.    Whether FDA may rescind the release of entries that have been distributed into commerce and are no longer in the importer's possession, and subject them to import detention and reconditioning requirements, where FDA's own procedures provide no authority for post-domestication rescission through the import enforcement mechanism.

IV.     Whether FDA's seven-month failure to issue a final substantive response to F&D International's Citizen Petition, filed September 23, 2025, constitutes agency action unlawfully withheld under 5 U.S.C. § 706(1), where 21 C.F.R. § 10.30(e)(2) imposes a mandatory 180-day response obligation.

V.      Whether FDA's rescission of released entries and imposition of impracticable reconditioning conditions, without pre-deprivation process or meaningful opportunity to respond, violated the Fifth Amendment's Due Process Clause.

## LEGAL STANDARD

A preliminary injunction requires a showing of: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent relief; (3) the balance of equities tips in Plaintiff's favor; and (4) the public interest favors an injunction. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). In this Circuit, all four factors must be independently

Case 1:25-cv-01086-LAF-JGM     Document 15     Filed 04/17/26     Page 6 of 21

satisfied — there is no sliding scale. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009).

Under the APA, a court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (internal citation omitted), and to apply its standards consistently — an "unexplained inconsistency" is an independent ground for reversal, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 136 S.Ct. 2117, 2126 (2016). The Supreme Court applied these principles specifically to FDA in *FDA v. Wages & White Lion Investments, LLC,* 604 U.S. 542, 145 S.Ct. 898, 917 (2025), holding that FDA may not mislead regulated entities or depart from prior policy without a reasoned explanation.

Critically, this case presents a more straightforward application of those standards than the formal rulemaking rescissions at issue in *State Farm* and *Encino Motorcars*. In both of those cases, the agency at least articulated a coherent rationale for its change of course, promulgated through notice-and-comment procedures, and the reviewing court's task was to assess whether that explanation was adequate.

Here, FDA never changed a rule — it advanced an affirmative detention rationale, disproved by its own approved testing protocol, and then silently substituted an entirely different basis that it had never previously applied to any F&D International entry. That is not an inadequate explanation for a policy change; it is post-hoc rationalization that *SEC v.*

Case 1:25-cv-01086-LAF-JGM    Document 15    Filed 04/17/26    Page 7 of 21

*Chenery Corp.*, 318 U.S. 80 (1943) and its progeny prohibit regardless of the form of agency action.

**ARGUMENT**

I.      <u>PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS</u>

This case turns on a straightforward inconsistency: FDA released eighteen materially identical shipments while detaining four and rescinding three without explanation. It then conditioned reconditioning approval on requirements Plaintiff cannot satisfy. That unexplained differential treatment—combined with FDA's shifting rationale, coercive reconditioning plans, and failure to provide a feasible compliance pathway— renders its conduct arbitrary and capricious under settled administrative law.

*State Farm* and *Encino Motorcars* are the foundational authorities for this proposition, but this case presents a simpler application. In *State Farm*, the Court faulted NHTSA for failing to consider the airbags-only alternative and for inadequately explaining its seatbelt conclusions — but NHTSA had at least articulated one coherent, consistently maintained rationale for what it was doing. In *Encino Motorcars*, the Department of Labor changed its published position on service advisor exemptions after decades of consistent treatment — but it went through notice-and-comment rulemaking to do so. The defect in each case was explanation.

Here, the defect is more fundamental: FDA stated an affirmative basis for detention, that basis was eliminated by undisputed certified laboratory results obtained through FDA's own approved protocol, and FDA then abandoned it without acknowledgment and imposed labeling-based objections it had never previously raised against any F&D International

Case 1:25-cv-01086-LAF-JGM     Document 15     Filed 04/17/26     Page 8 of 21

shipment. An agency that shifts its stated grounds for action after the original grounds are disproven is not presenting an inadequate explanation for a changed policy — it is presenting a pretextual one. The Supreme Court has made clear that pretextual agency rationales do not survive arbitrary-and-capricious review. *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019).

### A.   *FDA's Unexplained Differential Treatment of Identical Shipments Is Arbitrary and Capricious*

The Supreme Court will not uphold an agency's discretionary order if based on grounds invented after the fact. *See Chenery Corp.*, 318 U.S. at 87. Pretextual rationales fare no better. *See Department of Commerce*, 139 S. Ct. at 2575–76. As to the FDA, the Supreme Court has made it clear it must not "mislead regulated entities," and that it cannot deviate "'from a prior policy *sub silentio* or simply disregard[ed]' what it had previously said." *Wages & Lion*, 145 S.Ct. at 921.

Here, FDA initially detained four entries on adulteration grounds. F&D International responded with certified laboratory results showing every IA 16-131 analyte was at or below detection limits for every entry. Once FDA's adulteration rationale was disproven, FDA was required to either release the product or provide a reasoned explanation for continued detention.

But rather than releasing the entries upon receipt of compliant results, FDA shifted entirely to labeling grounds it had never previously asserted against any F&D International entry. Simply put, FDA is using detention authority—intended to address safety risks—to impose technical labeling requirements unrelated to safety and doing so inconsistently.

This inconsistency is further reflected in FDA's uniform issuance of reconditioning approvals subject to conditions not imposed on the fifteen released entries.

> **B.** **FDA's Treatment of Eighteen Identical Released Entries Without a Labeling Objection Is Unexplained and Dispositive**

When an agency changes course, it must show "good reasons for the new policy" and must "be cognizant that longstanding policies may have engendered serious reliance interests." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). An "unexplained inconsistency" in agency policy is itself a ground for finding agency action arbitrary and capricious. *Encino Motorcars*, 579 U.S. at 221–22. Where an agency's distinctions between similarly situated parties "bear[] no rational relationship" to the agency's statutory purposes, the action fails arbitrary-and-capricious review. *Judulang v. Holder*, 565 U.S. 42, 52–55 (2011).

FDA has released eighteen entries with materially identical product, labeling, and origin — without raising a labeling objection in any instance. It has provided no explanation for why the same labeling that passed FDA requirements eighteen times now warrants detention, reconditioning demands, and threatened destruction of four more entries. Even more troubling, FDA has now rescinded its release of three entries based on post-hoc technical, non-safety labeling requirements. This is the precise unexplained inconsistency that *Fox*, *Encino Motorcars*, and *Judulang* prohibit.

FDA may argue that prior releases do not bind future enforcement. But the APA demands more than the freedom to change course — it requires a reasoned explanation for the change. *Fox*, 556 U.S. at 515. FDA has provided none. It has not pointed to any change

in regulation, any change in agency policy, any change in the product, or any change in the manufacturer that would explain why the same labeling that was initially satisfactory eighteen times is suddenly grounds for detention, albeit as to seven identical entries.

C.      *FDA's Reconditioning Demand Is Disproportionate and Ignores the Obvious Alternative of Release with Comment*

Agency action is arbitrary and capricious where it imposes requirements that are impracticable to perform or fails to consider obvious, less burdensome alternatives. *See State Farm*, 463 U.S. at 43. That is precisely what occurred here. FDA's Notices of Action confirm that reconditioning is permitted; however, they condition that approval on requirements that Plaintiff cannot reasonably satisfy, effectively converting a compliance pathway into a mechanism for refusal.

FDA's reconditioning demand is arbitrary because it requires relabeling 264,000 individual units within 30 days—a process that is not operationally feasible and risks product degradation—despite FDA acknowledging that the product is safe and that compliance is achievable through relabeling.

D.      *FDA's Re-Detention of Domesticated Entries Were Unlawful*

FDA's rescission of three previously released entries—two of which occurred after the filing of this action—confirms an escalating enforcement posture. FDA's attempt to subject released and distributed entries to reconditioning requirements further underscores the lack of any coherent or lawful enforcement framework. Entries 788-1893346-3, 788-1912036-7 and 788-1912032-6 have already been distributed and consumed, and are no

Case 1:25-cv-01086-LAF-JGM     Document 15     Filed 04/17/26     Page 11 of 21

longer in F&D International's possession. Thus, a rescission-based detention as to these entries is legally untenable.

Two of the three rescissions were issued while this litigation was pending. *See* Feng Decl. ¶¶ 37–38. The response FDA delivered was not a substantive resolution of the outstanding issues — it was two additional rescissions of distributed product. FDA is not maintaining a pre-litigation enforcement posture; it is actively escalating enforcement against a plaintiff that has challenged that posture in federal court. That pattern of escalation during litigation strengthens rather than undermines the case for preliminary relief.

### E. The NLEA Labeling Violations FDA Asserts Do Not Apply to F&D International's Wholesale Food Service Distribution Model

Under 21 C.F.R. § 101.9(j)(2), NLEA nutritional labeling requirements do not apply to food sold in food service establishments where the food is not presented to the consumer in the package in which it was received and is instead prepared or served as part of a restaurant meal. F&D International distributes frozen roasted eel exclusively to food service customers — its customers receive the product in shipping cartons and prepare and serve it as part of restaurant meals; the individual unit packages are never presented to end consumers. *See* Feng Decl. ¶¶ 7–8.

FDA's own administrative record establishes its awareness of this distribution model. FDA's Notices of Action for each detained entry recite that "F&D counsel represented that the eel is intended solely for wholesale distribution to restaurants". Yet

FDA has never analyzed whether the § 101.9(j)(2) exemption applies and has never identified any evidence that any unit reached a retail consumer in the received package.

An agency's failure to consider an obviously applicable regulatory exemption is independently arbitrary and capricious. *State Farm*, 463 U.S. at 43. If the exemption applies, the NLEA violations FDA asserts are not violations at all, and the detentions have no lawful basis. FDA has offered no reason for treating a wholesale food service product as if it were a retail grocery item.

F.      *FDA's Failure to Take Final Action on the September 2025 Citizen Petition Violates 5 U.S.C. § 706(1)*

Section 706(1) of the APA empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." The action must be "discrete" and "legally required." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). Under § 10.30(e)(2), the Commissioner "shall" respond within 180 days — language that "unambiguously imposes a mandatory dut[y]." *Cook v. FDA*, 733 F.3d 1, 7–8 (D.C. Cir. 2013) (FDCA § 801(a)'s "shall" imposes mandatory FDA import duties).

F&D International filed a Citizen Petition under 21 C.F.R. § 10.30 on September 23, 2025. FDA issued a tentative response on March 6, 2026, stating that it 'has not yet resolved the issues raised' and requires further review, but has not issued final agency action on the Petition's substantive requests. FDA's continued inaction is particularly significant given that it has proceeded toward refusal of the detained entries while declining to resolve the very issues presented in the Petition.

The Fifth Amendment's Due Process Clause prohibits deprivation of property without due process. U.S. Const. Amend. V. Whether sufficient process was provided is evaluated under *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) the private interest affected; (2) the risk of erroneous deprivation through existing procedures; and (3) the government's interest. Each factor weighs heavily in Plaintiff's favor.

FDA's issuance of reconditioning approvals subject to shifting and impracticable conditions further deprived Plaintiff of any meaningful opportunity to comply. The risk of erroneous deprivation is substantial: FDA's re-detention bypassed every procedural safeguard (no supervisor approval, untimely notice, wrong ABI codes), applied a standard — the IA 16-131 adulteration "appearance" threshold — to a product that had already been tested and cleared, and then shifted to labeling grounds for which no pre-deprivation process was provided. The government's asserted interest in food safety is not served by re-detaining domesticated goods that passed every safety test.

## II.  PLAINTIFF WILL SUFFER IRREPARABLE HARM

Irreparable harm exists when "monetary damages are difficult to ascertain or inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994). Multiple independent, overlapping forms of irreparable harm exist here. FDA's continued detention of additional entries beyond those at issue further compounds this harm and threatens Plaintiff's ongoing business operations. This

Case 1:25-cv-01086-LAF-JGM    Document 15    Filed 04/17/26    Page 14 of 21

harm is compounded by FDA's position that, unless Plaintiff complies with infeasible reconditioning conditions, the detained entries will be refused.

### A. Sovereign Immunity Makes All Financial Harm Per Se Irreparable

The APA's sovereign immunity waiver (5 U.S.C. § 702) does not extend to money damages claims against the United States. Because F&D International cannot recover money damages for FDA's unlawful conduct, all financial injury — including the total loss of 264,000 units of perishable goods — is irreparable as a matter of law. *See, e.g.*, *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010).

### B. Destruction of Perishable Goods

FDA's formal refusal will require the export or destruction of 264,000 units of frozen eel — a perishable product whose commercial value degrades with each passing day of detention. Once destroyed, no monetary judgment restores the goods or the business relationships forfeited. Under FDA's own administrative detention regulations (21 C.F.R. Part 1, Subpart K), "perishable food" is defined by its inability to withstand detention without significant degradation.

This outcome will occur despite FDA's acknowledgment that the product can be brought into compliance through relabeling.

### C. Cascading Business Harm

FDA's March 9, 2026 letter expressly warned that a formal refusal "may result in increased scrutiny of future shipments from the same firm or manufacturer or could lead to import alert." An import alert against the Manufacturer would subject every future F&D International shipment to DWPE, effectively ending F&D International's thirty-year

import enterprise. Loss of an ongoing business and import enterprise constitutes irreparable harm. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32 (1975) (substantial loss of business and potential bankruptcy constitutes irreparable harm); *Multi-Channel TV Cable*, 22 F.3d at 551 (loss of goodwill and customer relationships is irreparable in the Fourth Circuit).

Additionally, FDA's own warning confirms that a formal refusal will be "documented in FDA's import records." This documentation prevents F&D International from petitioning for removal from Import Alert 16-131 — a process requiring five consecutive compliant entries — and prevents Plaintiff's manufacturers from obtaining Green List designation. These cascading regulatory consequences are "incapable of calculation" under *Multi-Channel TV Cable* and therefore irreparable.

The harm of FDA's actions is not static — it is expanding. F&D International faces systematic disruption of its entire import business absent court intervention. FDA's import records are publicly accessible. A documented formal refusal for a thirty-year compliant importer causes non-compensable reputational damage with customers, distributors, trading partners, and future suppliers that no damages award can restore. *Multi-Channel TV Cable*, 22 F.3d at 551.

III.   THE BALANCE OF EQUITIES STRONGLY FAVORS PLAINTIFF

When the government is the opposing party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

Destruction of 264,000 units of perishable frozen food; potential import alert ending a thirty-year import business; Green List jeopardy permanently impairing future import operations; reputational harm; cascading enforcement against new entries; and daily accruing storage costs — all precipitated by mathematical rounding differences of 1 mg or 0.9 g, involving no safety concern FDA has ever identified. And despite FDA's acknowledgment that the product can be brought into compliance through relabeling.

FDA has never alleged the product is unsafe. It has released eighteen identical entries. The Government can continue monitoring F&D International's future shipments, can require prospective label corrections on future entries, and can pursue Release with Comment for the detained entries — all without any public health cost. What FDA cannot articulate is any cognizable public health harm that would result from maintaining the status quo during litigation. The government cannot suffer harm from an injunction that merely ends an unlawful practice.

Plaintiff faces destruction of perishable goods, loss of its import business, and reputational harm, while FDA identifies no safety concern. The balance of equities therefore favors Plaintiff. Enjoining FDA from enforcing these conditions preserves the status quo while allowing the Court to determine whether FDA may impose such requirements consistent with the APA.

## VI.  PUBLIC INTEREST SUPPORTS PRELIMINARY INJUNCTION

The public interest is served by ensuring that federal agencies act lawfully, consistently, and in accordance with their own rules. An agency that detains food on adulteration grounds, loses that argument when confronted with negative laboratory

Case 1:25-cv-01086-LAF-JGM    Document 15    Filed 04/17/26    Page 17 of 21

results, then pivots to labeling grounds it never previously enforced — all while releasing eighteen identical entries without comment — is not acting lawfully. There is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations. *League of Women Voters*, 838 F.3d at 12.

FDA's primary mandate is protecting public health by ensuring the safety of food. The product is safe — FDA concedes this by its silence on adulteration after receiving the laboratory results. The public interest is not served by ordering the destruction of safe food over mathematical rounding conventions. A proportionate regulatory response — Release with Comment, prospective label corrections, affidavit of wholesale-only distribution — achieves every legitimate regulatory objective without destroying safe food or devastating a thirty-year compliant importer.

To be sure, FDA has no food safety interest at stake here — it has never alleged the product is unsafe or adulterated; it received certified laboratory results confirming non-adulteration and did not challenge them; and the "violations" it now asserts are mathematical rounding conventions with no nutritional consequence. The injunction does not undermine FDA's labeling authority; it compels FDA to apply that authority consistently. The public interest is not served by forcing destruction of safe food where FDA has acknowledged that compliance is achievable.

The public interest is served by ensuring FDA applies its enforcement standards uniformly. An FDA that releases eighteen identical shipments without comment and then detains four more creates commercial unpredictability that harms every importer and undermines confidence in the import regulatory system. Enjoining this pattern of

inconsistency enforces the APA's foundational requirement of reasoned, consistent agency action. *State Farm*, 463 U.S. at 43.

## REQUESTED RELIEF

For the foregoing reasons, Plaintiff F&D International Corp. respectfully requests that this Court enter a preliminary injunction:

1. Ordering Defendants to release Detained Entries 788-1887734-8, 788-1888520-0, 788-1890934-9, and 788-1893086-5, on the ground that the NLEA labeling requirements FDA has asserted do not apply to food distributed exclusively through food service channels under 21 C.F.R. § 101.9(j)(2), and that FDA has identified no cognizable basis for continued detention; or, in the alternative, enjoining Defendants from issuing a formal refusal of those entries, including refusal based on noncompliance with reconditioning conditions that are not operationally feasible, and from proceeding with export or destruction pending final resolution of this action;

2. Enjoining Defendants from giving any effect to the rescission notices issued for Entries 788-1893346-3, 788-1912036-7, and 788-1912032-6, and from treating those entries as subject to detention, reconditioning requirements, or refusal of admission, on the ground that FDA lacks authority to subject domesticated product to import detention and reconditioning after it has been released into commerce and distributed to end customers;

3. In the further alternative, ordering Defendants to release the four Detained Entries on a Release with Comment basis, as a less burdensome alternative that FDA failed to consider despite approving reconditioning in principle;

4. Enjoining Defendants from using any of the detentions or rescissions at issue in this litigation as a basis to (a) deny Plaintiff's petition for removal from Import Alert 16-131, (b) deny Green List designation to Plaintiff's manufacturers, or (c) place Plaintiff's manufacturers on any new or expanded import alert, pending final resolution of this action;

5. Compelling Defendants to issue a substantive final agency action on Plaintiff's Citizen Petition filed September 23, 2025, within 30 days of this Court's Order, consistent with the Commissioner's mandatory obligations under 21 C.F.R. § 10.30(e)(2), and enjoining Defendants from satisfying this requirement through further tentative responses or interim acknowledgments that do not resolve the substantive requests presented in the Petition; and

6. Enjoining Defendants from detaining future F&D International entries on labeling grounds without providing (a) a written explanation that distinguishes the basis for detention from FDA's treatment of the eighteen entries previously released without labeling objection, and (b) a compliance pathway that is operationally feasible given the nature of the product and the importer's wholesale food service distribution model.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant its Motion for Preliminary Injunction.

Dated: April 17, 2026

Respectfully submitted,

By:  */s/ Gustavo A. Bravo*
    Gustavo A. Bravo, Esq.*
    Florida Bar No. 551287
    *Lead Counsel for Plaintiff*

    BRAVO LAW
    1555 Bonaventure Blvd., Suite 157
    Weston, Florida 33326
    Telephone: (954) 790-6711
    gbravo@lawbravo.com
    efile@lawbravo.com

By:  */s/  Neil D. Kodsi*
    Neil D. Kodsi, Esq.
    North Carolina Bar No. 23228
    *Local Counsel for Plaintiff*

    FELDMAN KODSI
    8325 NE 2nd Ave., Suite 204
    Miami, FL 33138
    Telephone: (305) 445-2005
    NKodsi@FeldmanKodsi.com

* Appearing by Special Appearance Pursuant to L.R. 83.1(d)

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certified that the foregoing Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction contains <u>4,869</u> words (including headings and footnotes) as measured by Microsoft Word.

By:  */s/ Gustavo A. Bravo*
    Gustavo A. Bravo, Esq.